IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| WAYNE K. STRAYER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CIVIL ACTION NO. 04-110J |
| ) | |
| NEW ENTERPRISE STONE & ) | JUDGE KIM R. GIBSON |
| LIME COMPANY, INC., ) | |
| Defendant. ) | |

## MEMORANDUM OPINION and ORDER OF COURT

**GIBSON, J.**

### I. SYNOPSIS

This matter comes before the Court on the Motion of New Enterprise Stone & Lime Company, Inc. [hereinafter "Defendant" or "New Enterprise"] (Document No. 13) requesting summary judgment as to the only count in the Complaint of Wayne K. Strayer [hereinafter "Plaintiff" or "Strayer"]. Plaintiff's Complaint (Document No. 1) alleges a violation of the Americans with Disabilities Act of 1990 [hereinafter "ADA"], 42 U.S.C. § 12101, et seq. stemming from occurrences that transpired while Plaintiff was in Defendant's employ. After considering Defendant's motion and brief in support thereof, as well as Plaintiff's opposing papers, the Court, for the reasons stated below, hereby grants the motion for summary judgment against Plaintiff.

### II. JURISDICTION & VENUE

The Court asserts its jurisdiction to decide the federal question posed in this litigation pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4), as well as 42 U.S.C. § 2000e-5(f)(3). Venue is proper under 28 U.S.C. § 1391(b) and 42 U.S.C. § 2000e-5(f)(3).

## III. BACKGROUND AND MATERIAL FACTS NOT IN DISPUTE [1]

Plaintiff has been employed by New Enterprise since July 1972 and is currently employed in the position of payload operator at Defendant's Central City Plant. Besides payloaders, Strayer occasionally operates various other pieces of large equipment, such as Euclid vehicles and bulldozers.

On August 14, 1997, a farm tractor rolled over and onto Strayer. As a result, Plaintiff suffered injuries that included a broken pelvis, a torn diaphragm, the loss of some feeling in his legs, permanent weakness in his legs, and swelling of his left leg. Strayer was released to return to work on July 20, 1998 and returned to full duty on August 3, 1998.

Plaintiff denies that he needed any accommodation as a result of the injuries he sustained in that accident in order to perform his job duties with New Enterprise. However, between the winter of 2002 and the spring of 2003, New Enterprise Quarry Superintendent Stacy Calhoun [herinafter, "Calhoun"] received reports from Plaintiff's co-workers expressing their concern for Plaintiff's safety; several New Enterprise employees had witnessed Plaintiff falling down and struggling to maintain his balance. Calhoun also personally saw Strayer staggering backwards while the two stood conversing on a flat concrete surface. Calhoun also observed Strayer having difficulty getting in and out of the equipment that Plaintiff operates as part of his job. Further, during the winter of 2002, Strayer approached Calhoun and expressed that he was having difficulty performing

---

[1] The factual history recounted in this opinion is based upon Statements of Material Facts submitted by the parties pursuant to Local Rule 56.1, as well as any objections and counter-statements thereto. Although no indentations or marks are used, the Court has, where appropriate, directly quoted the language of the parties. Any fact not present here has been deemed by the Court to be immaterial, lacking adequate evidentiary support, disputed for purposes of the present motion, or argumentative and not factual. Additionally, the non-moving party concedes anything in the movant's Statement of Material Facts to which the non-moving party does not directly respond. L.R. 56.1(E). Some facts may not be in the same form as submitted because the Court has concluded that the record did not support the fact as proposed.

maintenance work and noted that there were some tasks he could not perform.

Sometime around early April, 2003, Calhoun contacted Dave Yonish, an assistant with Defendant's Safety Department, to express concern about the problems Plaintiff was experiencing on the job. Dave Yonish then contacted his supervisor, Corporate Safety Director Steve Tomlinson [hereinafter, "Tomlinson"] and explained the situation. Tomlinson then spoke with Rick Emerick, the Director of Human Resources, and Bill Carr, the Director of Insurance and Benefits, to inform them of the situation and request a medical review of Plaintiff.

On April 9, 2003, Tomlinson observed Plaintiff working at the job site and noticed that, while Plaintiff was having no difficulty operating the equipment, he was having trouble dismounting from the equipment in a customary fashion. Tomlinson also observed Strayer walking more gingerly than normal. Tomlinson then ordered Plaintiff to visit Dr. William Albert [hereinafter "Dr. Albert"] for an evaluation of his physical capabilities.

Dr. Albert eventually determined that Plaintiff could not lift more than 20 pounds or climb ladders, and that Plaintiff should not be permitted to operate heavy equipment. However, with a few accommodations, Albert initially determined that Plaintiff was qualified for the position of plantman-crusher. After reading these recommendations, Calhoun, Tomlinson, and Rodney Reffner, the Head Superviser, determined that Dr. Albert had not fully understood the practical details of each of Plaintiff's duties at the plant. Therefore, New Enterprise requested that Dr. Albert perform an on-site inspection at the plant.

Dr. Albert visited the Central City facility and spent approximately 3-4 hours walking through each job location where Plaintiff worked. Dr. Albert examined the equipment while Tomlinson explained what tasks were required for each duty. Tomlinson also demonstrated how

3

the equipment worked and how a person would enter and exit same. During the inspection, Dr. Albert confirmed that he did not get the detailed information he needed from the previous job descriptions that New Enterprise had provided.

On May 30, 2003, Dr. Albert altered his opinion and stated that, with the exception of operating a crane equipped with a foot brake, Plaintiff could be employed as an equipment operator, as long as a few accommodations were made. Dr. Albert suggested that Plaintiff be given a closer parking spot, have access to a lift or ramp that would assist him onto the equipment, and also avoid built-in ladders and maintenance jobs that involve climbing ladders or walking multiple ramps.

In the meantime, on April 30, 2003, Plaintiff received a release from his own doctor, Dr. Robert Rundorff, clearing Plaintiff for regular duty. Tomlinson was aware that Dr. Rundorff's findings conflicted with those of Dr. Albert, but to Tomlinson's knowledge, Dr. Rundorff had never visited the New Enterprise job site.

Plaintiff returned to work on June 9, 2003, at full salary and with the accommodations recommended by Dr. Albert in place, including a parking spot closer to the time clock and a lift to give Plaintiff access to machinery. From April 9, 2003, to May 3, 2003, Plaintiff was paid his full wages. Plaintiff was not paid for the work that he missed from May 4, 2003 until his return on June 9, 2003, with the exception of vacation pay for one week in May and for the Memorial Day holiday. However, on or about May 1, 2003, Plaintiff was given a short-term disability form to fill out. Plaintiff refused to do so because he concluded that he was not "disabled." If he had filled out the forms, Plaintiff would have been paid $300 per week.

Plaintiff filed a charge with the Equal Employment Opportunity Commission and received a Notice of Right to Sue dated February 20, 2004. Thereafter, on May 20, 2004, Strayer commenced

this action against New Enterprise under the ADA. Strayer seeks a declaratory judgment that Defendant's acts have violated the Plaintiff's rights under that statute; an injunction prohibiting New Enterprise and its agents from violating any of Plaintiff's federal, statutory, and constitutional rights; a monetary judgment to compensate Strayer for his lost pay; compensatory and punitive damages; and costs and attorney's fees. On February 23, 2005, New Enterprise moved for summary judgment, arguing that Strayer is not disabled within the meaning of the ADA; that Strayer did not incur an adverse employment action, as the law requires; and that New Enterprise was justified in taking the action it did in order to protect the safety of not only Strayer, but also that of Plaintiff's co-workers.

## IV. ANALYSIS

**A.    Standard on Summary Judgment**

> Summary judgment is appropriate only when it is demonstrated that there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S. Ct. 2548, 2552- 57, 91 L. Ed.2d 265 (1986); Fed. R. Civ. P. 56(c). An issue of material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202 (1986). In deciding a motion for summary judgment, all reasonable inferences must be drawn in favor of the non-movant. *Oritani [Sav. & Loan Ass'n v. Fidelity & Deposit Co.*, 989 F.2d 635, 638 (3d Cir. 1993)].

*Troy Chem. Corp. v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

> As to materiality, the substantive law will identify which facts are material. Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted. *See generally* 10A C. Wright, A. Miller, & M. Kane, Federal Practice and Procedure § 2725, pp. 93-95 (1983). This materiality inquiry is independent of and separate from the question of the incorporation of the evidentiary standard into the summary judgment determination. That is, while the materiality determination rests on

> the substantive law, it is the substantive law's identification of which facts are critical and which facts are irrelevant that governs. Any proof or evidentiary requirements imposed by the substantive law are not germane to this inquiry, since materiality is only a criterion for categorizing factual disputes in their relation to the legal elements of the claim and not a criterion for evaluating the evidentiary underpinnings of those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed.2d 202, 211 (1986).

> Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict. The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor. *Adickes [v. S.H. Kress & Co.*, 398 U.S. 144, 158-159, 90 S. Ct.1598, 1608-1609, 26 L. Ed. 142, 159-160 (1970)]. Neither do we suggest that the trial courts should act other than with caution in granting summary judgment or that the trial court may not deny summary judgment in a case where there is reason to believe that the better course would be to proceed to a full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S. Ct. 1031, 92 L. Ed. 1347 (1948).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 2513-14, 91 L. Ed.2d 202, 216 (1986).

**B.    Requirements of the ADA**

In order to establish a *prima facie* case of discrimination under the ADA, a plaintiff must demonstrate that: "(1) he is a disabled person within the meaning of the ADA; (2) he is otherwise qualified to perform the essential functions of the job, with or without reasonable accommodations by the employer; and (3) he has suffered an otherwise adverse employment decision as a result of discrimination." *Gaul v. Lucent Techs. Inc.*, 134 F.3d 576, 580 (3d Cir. 1998). With respect to an individual, the term "disability" is defined by the ADA as follows: "(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual; (B) a record of such an impairment; or (C) being regarded as having such an impairment." 42 U.S.C. §

12102(2)(A)-(C).

According to federal regulations, plaintiffs claiming a physical impairment under the ADA must demonstrate "[a]ny physiological disorder, or condition, cosmetic disfigurement, or anatomical loss affecting one or more of the following body systems: neurological, musculoskeletal, special sense organs, respiratory (including speech organs), cardiovascular, reproductive, digestive, genito-urinary, hemic and lymphatic, skin, and endocrine[.]" 29 C.F.R. § 1630.2(h)(1). The major life activities that the impairment must substantially limit are defined as "functions such as caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." 29 C.F.R. § 1630.2(i). Such an activity is "substantially limited" if the individual is "[u]nable to perform a major life activity that the average person in the general population can perform," or if she is "[s]ignificantly restricted as to the condition, manner or duration under which [the] individual can perform a particular major life activity as compared to the condition, manner, or duration under which the average person in the general population can perform that same major life activity." 29 C.F.R. § 1630.2(j)(1)(i)-(ii).

> The following factors should be considered in determining whether an individual is substantially limited in a major life activity: (i) the nature and severity of the impairment; (ii) the duration or expected duration of the impairment; and (iii) the permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

29 C.F.R. § 1630.2(j)(2)(i)-(iii).

In support of its Motion for Summary Judgment, New Enterprise advances three distinct arguments. Document No. 14, pp. 10-21. In its first argument, New Enterprise contends that Strayer is not disabled within the meaning of the ADA. *Id.* at 10-17. Second, New Enterprise asserts that its decision to place Strayer on involuntary leave did not constitute an adverse

employment decision. *Id.* at 17-19. Third, New Enterprise argues that its decision to place Strayer on involuntary leave was justified under 29 C.F.R. § 1630.15(b)(2) and the U.S. Supreme Court's decision in *Chevron U.S.A., Inc. v. Echazabal*, 536 U.S. 73, 122 S. Ct. 2045, 153 L. Ed.2d 82 (2002). *Id.* at pp. 19-21.

### C. Plaintiff is Not Substantially Limited in a Major Life Activity

Plaintiff asserts that he is statutorily disabled as a result of the 1997 tractor accident. Document No. 18, p. 9. Defendant's first contention is that Strayer does not meet the statutory definition because none of his major life activities are substantially impaired. Document No. 14, pp. 10-13.

At the outset, it is worth noting that there is a difference between a disability and an impairment. In *Sutton v. United Air Lines, Inc.*, 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed.2d 450 (1999), the U.S. Supreme Court stated as follows:

> A "disability" exists only where an impairment "substantially limits" a major life activity, not where it "might," "could," or "would" be substantially limiting if mitigating measures were not taken. A person whose physical or mental impairment is corrected by medication or other measures does not have an impairment that presently "substantially limits" a major life activity. To be sure, a person whose physical or mental impairment is corrected by mitigating measures still has an impairment, but if the impairment is corrected it does not "substantially limit" a major life activity.

*Sutton*, 527 U.S. at 482-83, 119 S. Ct. at 2146-47, 144 L. Ed.2d at 462. There is no dispute as to whether Strayer suffers from an impairment. The dispositive question as to Plaintiff's qualification under 42 U.S.C. § 12102(2)(A) is whether this impairment rises to the level of a disability. "Merely having an impairment does not make one disabled for purposes of the ADA. Claimants also need to demonstrate that the impairment limits a major life activity." *Toyota Motor Mfg, Ky, Inc.*, 534 U.S.

8

at 195, 122 S. Ct. at 690, 151 L. Ed.2d at 629. "To qualify as disabled, a claimant must further show that the limitation on the major life activity is 'substantial.'" *Id.*

A difficulty standing still is the only impaired life activity that the Court can discern from the record. Strayer's Memorandum in Support of His Response to Defendant's Motion for Summary Judgment (Document No. 18) merely asserts that he was injured in the 1997 tractor accident, that he continues to suffer balance problems when standing still, and that Defendant's "employees had seen Plaintiff on multiple occasions falling and struggling to maintain his balance." Document No. 18, p. 9. According to Strayer, "[t]hese facts make it clear that Plaintiff was indeed suffering from a disability and that disability did affect Plaintiffs [*sic*] major life activities such as standing, walking, lifting and other activities requiring lower body strength and endurance." *Id.*

The only evidence to support this assertion is Plaintiff's deposition testimony that he suffers from a disability. Strayer Trans., exh. 1 attached to Document No. 13, p. 87-88. Strayer's injuries stemming from the 1997 tractor accident included a broken pelvis and a torn diaphragm. He continues to suffer the loss of some feeling in his legs, permanent weakness in his legs, and swelling of his left leg.[2] Though he takes medication for his blood pressure, Plaintiff apparently does not receive treatment for his leg condition or for pain. Strayer Trans., exh. 1 attached to Document No. 13, p. 40. Further, according to his own testimony, the only life activity Plaintiff has trouble performing is standing still;[3] Strayer denies any trouble walking, and testified that he suffers

---

[2] In his deposition, Strayer testified that he believes his leg problems resulted not from the accident itself, but rather from negligent medical treatment subsequent to the accident. Strayer Trans., exh. 1 attached to Document No. 13, pp. 38-39. He testified that he was left to lie in his hospital bed without stimulants and that this caused him to lose the nerves in both of his legs. *Id.* at 39.

[3] At deposition, Plaintiff suggested that his difficulty standing still is not related to the 1997 tractor accident: "I do have trouble standing still and I don't deny it. I always have. I had it before the accident, because I never did stand still." *Id.* at 55.


from no condition that impedes his ability to work:

> I have trouble with just standing there. I like to lean against something, because my leg goes weak. And it does create a balance problem while you're just standing there, but climbing up and down or anything I have no problem with all that. I mean, I'm slower than I used to be, which is understandable, but I have nothing that would interfere with my job functions.

*Id.* at p. 55.

The record is also bereft of any evidence that Plaintiff's difficulty standing is a disability cognizable under the ADA. While Strayer's coworkers did report his balance problems, Plaintiff himself either calls such reports incorrect, *id.* at 54, or advances alternative explanations, such as icy conditions, *id.* at 54, his own girth, *id.* at 56, and Defendant's inadequate equipment, *id.* at 98. Plaintiff's isolated claim that he suffers from a disability does nothing to contradict the evidence, which preempts any reasonable conclusion that Plaintiff's major life activities are substantially impaired.

While Strayer undoubtedly suffers ongoing physical problems, moderate difficulties and "residual impairments after serious injury" must impose a sufficient quality and quantity of impairment before they qualify as disabilities under the ADA. *Kelly v. Drexel Univ.*, 94 F.3d 102, 107-08 (3d Cir. 1996). Plaintiff has failed to present any evidence establishing that his ongoing leg problems satisfy the demands of the ADA. In the absence of such evidence, no reasonable finder of fact could conclude that the nature and severity of Plaintiff's impairments are of such a degree as to render him disabled under the statute that grounds this lawsuit. While the Court acknowledges Strayer's condition, Plaintiff's own testimony makes it clear that his condition does not have a significant enough impact on his daily life. For these reasons, Strayer's claim under 42 U.S.C. § 12102(2)(A) cannot proceed.

### D. Plaintiff Has No Other Means of Establishing an ADA Disability

Having found that Strayer did not raise a genuine issue of material fact regarding whether he is disabled under 42 U.S.C. § 12102(2)(A), the Court must now assess whether Strayer raised a genuine issue of material fact regarding whether he is statutorily disabled due to either a record of a substantially impaired major life activity or from Defendant regarding him as having such an impairment. 42 U.S.C. § 12102(2)(B)-(C). As New Enterprise correctly notes, Strayer does not even allege that he has a record of a disabling impairment. Document No. 14, p. 10. Therefore, the dispositive question is whether Strayer has presented enough evidence to allow a reasonable finder of fact to conclude that New Enterprise regarded him as disabled under 42 U.S.C. § 12102(2)(C).

In *Sutton v. United Airlines*, the U.S. Supreme Court explained the contours of this inquiry:

> Subsection (C) provides that having a disability includes "being regarded as having," § 12102(2)(C), "a physical or mental impairment that substantially limits one or more of the major life activities of such individual," § 12102(2)(A). There are two apparent ways in which individuals may fall within this statutory definition: (1) a covered entity mistakenly believes that a person has a physical impairment that substantially limits one or more major life activities, or (2) a covered entity mistakenly believes that an actual, nonlimiting impairment substantially limits one or more major life activities. In both cases, it is necessary that a covered entity entertain misperceptions about the individual–it must believe either that one has a substantially limiting impairment that one does not have or that one has a substantially limiting impairment when, in fact, the impairment is not so limiting.

*Sutton v. United Airlines*, 527 U.S. 471, 489, 119 S. Ct. 2139, 2149-50, 144 L. Ed.2d 450, 466-67 (1999). The parties in the instant case agree that Strayer has an impairment. Document No. 14, p. 14. Therefore, this case must be evaluated for purposes of the second "regarded as" category described in *Sutton*. This inquiry is circumscribed by the more general inquiry regarding what type of impairment constitutes a "disability" under the ADA. As the Court of Appeals has explained, "if

11

an impairment at a certain level of severity would constitute a disability, then it follows that an employer who perceives an employee as having such an impairment perceives the employee as disabled." *Taylor v. Pathmark Stores, Inc.*, 177 F.3d 180, 188 (3d Cir. 1999). Strayer cannot satisfy the requirements of § 12102(2)(C) without showing that New Enterprise perceived his impairment as limiting one or more of his major life activities. In his effort to do so, Strayer relies on two events: Tomlinson's request that Strayer visit Dr. Albert for a physical examination and New Enterprise's request that Strayer complete the form necessary to obtain disability benefits. Document No. 18, pp. 9-10.

The ADA specifically limits the circumstances under which a covered employer may require that an employee undergo a medical examination. 42 U.S.C. § 12112(d)(4)(A) states that:

> A covered entity shall not require a medical examination and shall not make inquiries of an employee as to whether such employee is an individual with a disability or as to the nature or severity of the disability, unless such examination or inquiry is shown to be job-related and consistent with business necessity.

As clarified by federal regulations, "[a] covered entity may require a medical examination (and/or inquiry) of an employee that is job-related and consistent with business necessity." 29 C.F.R. § 1630.14(c). In *Tice v. Ctr. Area Transp. Auth*, the Court of Appeals explained that "a request for an [independent medical examination] that complies with the statutory restrictions will never, in the absence of other evidence, be sufficient to demonstrate that an employer 'regarded' the employee as substantially limited in a major life activity." 247 F.3d 506, 514 (3d Cir. 2001). The *Tice* court held that because a job-related medical examination that is consistent with business necessity is necessarily limited to evaluating the employee's fitness for a specific kind of work, a "request for such an appropriately-tailored examination only establishes that the employer harbors doubts (not

certainties) with respect to an employee's ability to perform a particular job. Doubts alone do not demonstrate that the employee was held in any particular regard. . . ." *Tice*, 247 F.3d at 515. Therefore, "an employer's request for a medical examination, standing alone, is not sufficient to establish that the employer 'regarded' the employee as disabled. . . ." *Id.* at 508-09.

Thus, Tomlinson's request for a medical evaluation from Dr. Albert does not by itself create a genuine issue as to how New Enterprise regarded Strayer.[4] Strayer's only corroborating evidence is Defendant's request that he apply for disability benefits. Document No. 18, p. 10; Strayer Trans., exh. 1 attached to Document No. 13, p. 64, 69. As a member of the Teamster's Union, Strayer was entitled to disability benefits under certain conditions. *Id.* at pp. 43-44. In a Position Letter to the Equal Employment Opportunity Commission, New Enterprise noted that it had agreed to place Strayer on Short Term Disability and had mailed disability forms to Plaintiff in May 2003. Exh. 10 attached to Document No. 13; *see also* Strayer Trans., exh. 1 attached to Document No. 13, p. 64, 69 (acknowledging receipt of the disability forms).

Neither party has presented the Court with the terms of the contract with New Enterprise that sets forth employee eligibility for disability benefits. In agreeing to place Strayer on Short Term Disability and sending out the appropriate forms, Defendant clearly considered Plaintiff

---

[4]Strayer does not argue that New Enterprise's requirement that he undergo a medical examination violated 42 U.S.C. § 12112(d)(4). Instead, he relies on the examination as evidence to establish that New Enterprise regarded him as disabled within the meaning of § 12102(2)(C). His complaint alleges only a violation of § 12112(a). Document No. 1, p. 4, ¶ 23. The examination is not even mentioned in the Complaint. In *Tice*, the Court of Appeals observed that "it is not clear from the text of the ADA itself whether nondisabled individuals are permitted to sue for violations of § 12112(d)." *Tice*, 247 F.3d at 516-17. Some courts have concluded that one need not be a "qualified individual with a disability" in order to sue under § 12112(d). *Griffin v. Steeltek, Inc.*, 160 F.3d 591, 592-95 (10th Cir. 1998); *Fredenburg v. Contra Costa County Dep't of Health Servs.*, 172 F.3d 1176, 1181-83 (9th Cir. 1999); *Conroy v. New York State Dep't of Corr. Servs.*, 333 F.3d 88, 94-102 (2d Cir. 2003). Since Strayer alleges only a violation of § 12112(a), the Court has no occasion to consider whether he would be able to sue for a violation of § 12112(d)(4) despite the fact that he is not a "qualified individual with a disability" within the meaning of § 12112(a).

disabled in some manner. However, the record contains evidence that the collective bargaining agreement's definition of "disabled" cannot perfectly coincide with that found in the ADA. Plaintiff's failure to demonstrate otherwise is thus fatal to any claim under § 12102(2)(C).

Defendant has never suggested that Plaintiff could not perform his job. Indeed, Strayer's immediate supervisor testified that Plaintiff "pretty much could do anything we wanted." Calhoun trans., exh. 3 attached to Document No. 13, p. 13. Defendant's Corporate Safety Director also stated that "[t]here had been no complaints about him doing his job well." Tomlinson trans., exh. 4 attached to Document 13, p. 14. Plaintiff was taken off Defendant's work schedule not from an inability to work, but out of concerns that he was not performing his job with an adequate margin of safety, concerns generated by observations of Plaintiff working. *Id.* at 15. Tomlinson testified that the purpose of Dr. Albert's examination of Plaintiff was to determine "what [Plaintiff] could safely do." Tomlinson trans., exh 4, Document 13, p. 18. In other words, the evidence before the court compels the conclusion that New Enterprise sent Plaintiff disability forms for the exclusive reason that they were concerned about Plaintiff's ability to safely perform particular aspects of his job. Defendant had no other concerns about the quality of Strayer's work.

The testimony of Tomlinson and Calhoun evinces that, though a New Enterprise employee who is disabled under the ADA may qualify for contractual disability benefits, an Employee disabled under the collective bargaining agreement is not necessarily entitled to ADA protection. This is so because the record demonstrates that the only concern at New Enterprise was Plaintiff's ability to perform certain tasks safely. Thus, to the extent New Enterprise regarded Strayer as disabled, it was by virtue of Plaintiff's impaired *work* abilities, not any impaired *life* function. Therefore, the Court must apply the class-based analysis that the Supreme Court has adopted for

14

plaintiffs who suggest that an ability to work is the impaired life function that triggers ADA protection.

In the context of work as a major life activity, the ADA requires a greater degree of impairment than the inability to perform specific duties. The "tasks unique to any particular job are not necessarily important parts of most people's lives." *Toyota Motor Mfg., Ky, Inc. v. Williams*, 534 U.S. 184, 201, 122 S. Ct. 681, 693, 151 L. Ed.2d 615, 633 (2002). Thus, "occupation-specific tasks may have only limited relevance" in deciding whether an employer regards its employee as disabled under the ADA. *Id.*

In *Murphy v. United Parcel Service*, 527 U.S. 516, 119 S. Ct. 2133, 144 L. Ed.2d 484 (1999), the plaintiff demonstrated that he had been "regarded as unable to perform the job of mechanic only when that job require[d] driving a commercial motor vehicle–a specific type of vehicle used on a highway in interstate commerce." *Murphy*, 527 U.S. at 524, 119 S. Ct. at 2138, 144 L. Ed.2d at 492. This showing failed to demonstrate a genuine issue of material fact as to whether his employer regarded him as disabled. *Murphy*, 527 U.S. at 523-24, 119 S. Ct. at 2138-39, 144 L. Ed.2d at 491-92. It was insufficient for the plaintiff to show merely that his employer regarded him as unable to perform a particular job with unique certification requirements. *Id.*

Similarly, in *Sutton v. United Air Lines*, 527 U.S. 471, 119 S. Ct. 2139, 144 L. Ed.2d 450 (1999), the plaintiffs failed to demonstrate that defendant regarded them as disabled when it refused to hire them as global airline pilots because of their poor eyesight. *Sutton*, 527 U.S. at 492-93, 119 S. Ct. at 2151-52, 144 L. Ed.2d at 450. Since the position of global airline pilot was a single job, the plaintiffs' allegation that the defendant regarded them as disabled could not survive; exclusion from a single position did not, by itself, support the claim under § 12102(2)(C). *Id.*

Moreover, the mere belief that an employee is unable to perform a particular task safely–in contrast to a belief that the employee is unable to perform that task at all–is also insufficient to establish per se that an employer regards that employee as disabled. In *Chandler v. City of Dallas*, 2 F.3d 1385 (5th Cir. 1993), the court held that, within the context of the Rehabilitation Act, the defendant-employer did not regard plaintiff-employees as substantially limited in a major life activity just because it was concerned that the employees' poor eyesight prevented them from driving safely.[5] *Chandler*, 2 F.3d at 1393. *See also McGeshick v. Principi*, 357 F.3d 1146 (10th Cir. 2004) (upholding summary judgment against plaintiff under the Rehabilitation Act because, in part, an employee is not necessarily regarded as disabled because of her employer's safety concerns); *Ellis v. Mohenis Servs.*, No. Civ. 96-6307, 1998 WL 564478, at * 5 (E.D. Pa. 1998) (denying reconsideration of an earlier grant of summary judgment for defendant-employer on the same basis).

The case law thus mandates that Strayer offer evidence that New Enterprise misperceived a more significant and general inability to work than not being able to safely mount or dismount heavy machinery. That single inability apparently was, however, a substantial enough impairment to qualify Strayer for disability benefits under the collective bargaining agreement. This distinction undermines whatever probative value the disability forms had with respect to how New Enterprise regarded Strayer's impairment. Thus, the fact that New Enterprise sent Strayer disability forms, even in conjunction with the company's request that Strayer undergo a medical evaluation, cannot buttress Plaintiff's § 12102(2)(C) claim against summary judgment. Plaintiff's failure to offer any

---

[5] The Rehabilitation Act, which was the central issue in *Chandler*, uses the same definition for "handicap" as the ADA does for "disability." *Chandler*, 2 F.3d at 1390.

additional evidence compels the court to find that Plaintiff suffers no disability under any provision of the ADA.

## V. CONCLUSION

Defendant's additional arguments include a claim that Strayer did not suffer an adverse employment action and that New Enterprise was justified in placing Strayer on leave because doing so was job-related and consistent with business purposes in that New Enterprise acted to prevent Strayer from harming himself or others.

With regard to the month that Plaintiff spent without pay, such leave almost certainly constitutes an adverse employment action. In the context of Title VII, the Third Circuit has "defined 'an adverse employment action' . . . as an action by an employer that is 'serious and tangible enough to alter an employee's compensation, terms, conditions, or privileges of employment.'" *Storey v. Burns Int'l Sec. Servs.*, 390 F.3d 760, 764 (3d Cir. 2004) (quoting *Cardenas v. Massey*, 269 F.3d 251, 263 (3d Cir. 2001)). It is difficult to imagine the approach taken in *Storey* and *Cardenas* not encompassing a substantial involuntary leave without pay such as the one forced upon Strayer in the case *sub judice*. To the extent that any uncertainty exists, and whether or not Plaintiff's refusal to apply for disability benefits mitigates the damages arising from any adverse action, the Court need not decide those issues now. Having found that Plaintiff's impairment does not rise to the level of a protected disability within the scope of the ADA, it is enough for the Court to simply note its skepticism toward this component of Defendant's motion.

The Court expresses similar doubt concerning the affirmative defense New Enterprise advances under 29 C.F.R. § 1630.15(b), which states that:

> It may be a defense to a charge of discrimination, as described in § 1630.10,

17

> that an alleged application of qualification standards, tests, or selection criteria that screens out or tends to screen out or otherwise denies a job or benefit to an individual with a disability has been shown to be job-related and consistent with business necessity, and such performance cannot be accomplished with reasonable accommodation, as required in this part.

By a faithful reading of § 1630.15(b), this defense is only available against claims based on discriminatory qualification standards. *See also Sista v. CDC Ixis N. Am., Inc.*, 445 F.3d 161, 171 (2d Cir. 2006) (holding that the "'poses a direct threat defense'" is meant to be applied in cases alleging discriminatory application of qualification standards as opposed to cases in which a plaintiff alleges 'disparate treatment'"). Strayer has not alleged that New Enterprise held him to any qualification standard for his continued employment. That Strayer's complaint relied on a theory of disparate treatment suggests to the Court that without any other basis, this argument would not justify entering summary judgment in Defendant's favor.

Regardless, as detailed in the foregoing analysis, such an alternative ground exists. Since Strayer is not a "qualified individual with a disability," he cannot establish a *prima facie* case of discrimination under the ADA. Accordingly, the Court must grant Defendant's Motion for Summary Judgment.

An appropriate order follows.

AND NOW, this 22nd day of September, 2006, in accordance with the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED** that the Defendant's Motion for Summary Judgment (Document No. 13) is **GRANTED**.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment in favor of the Defendant and against the Plaintiff.

BY THE COURT:

*[signature]*

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**

**Cc: All counsel of record**